THIGPEN, Judge.
In April 1990, Michael A. Dickson filed a complaint against the Birmingham Humane Society (Humane) and others, alleging that an employee of Humane had neutered Dickson’s male Rottweiler dog, and that that act was negligent and wanton, and constituted conversion. Humane answered, alleging, inter aha, that Dickson had been contributorily negligent. The case was tried before a jury, which returned a verdict in favor of Dickson and against Humane, and assessed compensatory damages in the amount of $7,500. The trial court entered a judgment accordingly. Humane’s post-judgment motion was denied. Hence, this appeal.
Dickson testified that in 1990, he owned a male dog named Rocky, which he kept in a fenced-in yard. He stated that he bought Rocky in Germany in 1984 for approximately $900, and that he transported him to the United States. He testified that Rocky had a champion bloodline, with a German registration and an appropriate identifying ear tattoo. Dickson stated that Rocky was trained as an attack and guard dog, and that he was used for profitable breeding purposes.
Dickson testified that on March 12, 1990, he discovered that his child had not closed the gate on Rocky’s pen, and that Rocky had escaped. Other testimony revealed that the Rabies Control Unit (Unit) for Jefferson County received a call that day regarding a dog at large in the area, and that the dog was picked up and impounded. There was testimony that the dog had no identification tags, and that it was kept at the Unit until March 19, 1990, when it was transferred to Humane’s shelter. Harrison Lloyd, former director of Humane, testified that Humane received the dog on approximately March 19, and that the dog remained there for about a month before Dickson came to the shelter, claiming that the dog belonged to him.
Dickson testified that when he discovered that Rocky was missing, he attempted to locate the dog by searching the neighborhood and advertising in a newspaper. He stated that when Rocky escaped, the dog was wearing a collar with identifying information. He also testified that he called Humane and was notified that Humane did not pick up dogs. He stated that he called the Unit several times, that he was told that the Unit did not have a Rottweiler, and that he went by the Unit about a week following Rocky’s disappearance, but he did not see Rocky there.
Dickson testified that several weeks later, a friend told him that Rocky was at Humane’s shelter. Dickson stated that he went to Humane on Friday, April 13, and found Rocky, but that an office worker told him that the dog would have to be adopted and neutered. Dickson testified that Lloyd advised him that it was Humane’s policy to spay or neuter all adopted dogs, and that it would make no exception for the dog which Dickson was claiming as his dog. Dickson explained that Rocky was used for breeding purposes, and that he did not want him neutered. Dickson stated that he told other employees and Lloyd about Rocky’s identification, but that he was under the impression that it did not matter, because the dog could leave only after being neutered.
Dickson requested that Humane not neuter the dog until he had talked to his lawyer. He testified that he also telephoned two of Humane’s board members to discuss the situation, and that he offered to pay any expenses incurred by Humane in keeping the dog, but that they told him their policy was to spay or neuter all dogs. He consulted his lawyer, returned to Humane on Monday, and was informed that the dog had already been neutered. The record reveals that the dog was neutered on Friday after Dickson left Humane. Dickson stated that he was very upset, and that he paid the adoption fee and took Rocky home.
Humane contends on appeal that the trial court erred in its interpretation of a city ordinance regarding ownership of the dog at *761 the time of the alleged damage. Specifically, it contends that, pursuant to Birmingham City Code § 6-1-18, it obtained title and ownership of the dog when the dog was transferred to Humane from the Unit. That ordinance provides that a rabies control, officer may pick up any dog found at large, that the dog may be impounded at the Unit, and that after 3 days, “the supervisor of the [Unit] may transfer the title to and give ownership of any dog held in the [Unit] to,” inter alia, Humane. Therefore, Humane contends, Dickson forfeited his rights in the dog when he failed to redeem it within the statutory period. Humane argues that the dog remained in its possession for nearly a month, and that during that time, its options included euthanasia, neutering, or adoption. The evidence, however, discloses that when Dickson located his dog at Humane, none of these actions had been taken.
Lloyd testified that Humane’s policy of spaying or neutering all dogs was strictly enforced. Lloyd admitted that he told Dickson that he could not get the dog without the dog being neutered. He testified, however, that if a dog owner had proof of ownership of a dog in Humane’s possession, the owner would be allowed to take the dog without spaying or neutering. This exception to Humane’s policy evidences Humane’s recognition that any title or ownership rights of animals it acquires are subject to the rights of the true owner. Once Dickson claimed to be the true owner of the dog and requested that the dog, which had not been neutered at that time, not be altered, Humane could have simply refrained from taking any action until the controversy was resolved. It is undisputed that Dickson advised Humane that he believed the dog to be his dog, and that he did not want the dog to be neutered for specific and valid reasons.
This court does not view Dickson’s return on Monday as an unreasonable delay. From the record, it appears that even if Dickson had returned on the same day, the dog might have already been neutered. We agree with Dickson’s assertion that, had the dog already been adopted by someone else, neutered, or euthanized prior to Dickson’s first claiming ownership, Dickson would not have had a cause of action against Humane. That, however, was not the case. Instead, Humane, which had held the dog for nearly one month without taking any action, had the dog neutered after Dickson’s notice of ownership and request that Humane not neuter the dog.
The jury apparently believed Dickson’s testimony. There is evidence from which the jury could conclude that Humane’s actions were negligent. Jury verdicts carry a presumption of correctness on appeal, and that presumption is strengthened by the denial of a motion for new trial. A judgment based upon a jury verdict will be reversed only, if it is plainly and palpably wrong, and we are bound to review the evidence in the light most favorable to the prevailing party and to indulge inferences the jury was free to draw. Ashbee v. Brock, 510 So.2d 214 (Ala. 1987). We find no error in the jury verdict and the resulting judgment.
Humane also contends that the trial court erred in not instructing the jury regarding contributory negligence. Humane argues that Dickson was contributorily negligent in allowing the dog to escape from its pen, and in his delay in retrieving the dog. At the conclusion of the trial, the trial court denied Humane’s request to instruct the jury on contributory negligence, and it also denied a second request to instruct the jury during further instructions in response to a jury question. The trial judge stated that there was no evidence that Dickson was negligent in allowing the dog to escape, and we find no evidence in the record to indicate that Dickson negligently allowed the dog to escape. Additionally, we cannot say that his actions in locating or retrieving the dog were negligent. Even if his actions were considered as negligent, such acts were totally unrelated to and did not contribute to the act of Humane’s neutering the dog after Humane was placed on notice of Dickson’s ownership claim. We find no error in the trial court’s refusal to instruct the jury regarding contributory negligence.
AFFIRMED.
*762 YATES, J., concurs.
ROBERTSON, P.J., concurs in the result.